[Cite as *State v. Jackson*, 2018-Ohio-3241.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-140** |
| DION LAMARR JACKSON, SR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2017 CR 000155.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).


DIANE V. GRENDELL, J.

{¶1}   Defendant-appellant, Dion Lamarr Jackson, Sr., appeals from the denial of his Motion for Severance of Offenses and convictions for Aggravated Robbery and Robbery in the Lake County Court of Common Pleas.  The issues to be determined by this court are whether a court abuses its discretion in denying a motion to sever separate robbery offenses when the facts of the two offenses taken together help identify the suspect and whether the identification of the defendant in robbery offenses

is supported by the evidence when his build is similar to the suspect's, his DNA is found on clothing discarded near the site of the robbery, and a car associated with him matches the description of the car used by the perpetrator. For the following reasons, we affirm the judgment of the court below.

{¶2} On February 10, 2017, the Lake County Grand Jury issued an Indictment, charging Jackson with Aggravated Robbery (Counts One and Five), felonies of the first degree, in violation of R.C. 2911.01(A)(1); Kidnapping (Counts Two and Three), felonies of the first degree, in violation of R.C. 2905.01(A)(2); and Robbery (Counts Four and Six), felonies of the second degree, in violation of R.C. 2911.02(A)(2).

{¶3} On July 5, 2017, Jackson filed a Motion for Severance of Offenses for Trial, requesting that the charges arising from the February 22, 2016 robbery be tried separately from those arising from the robbery on March 19, 2016. The State opposed the Motion. The trial court denied the Motion on August 3, 2017, finding the evidence to be "simple and direct" and that no prejudice would result from trying the charges together.

{¶4} A jury trial was held on August 22-24, 2017. The following pertinent testimony and evidence were presented:

{¶5} Joshua Hay, an employee at the Dollar General on Madison Avenue in Painesville, was working on February 22, 2016. At approximately 9:10 p.m., he exited the restroom and observed a man "hovering" by the registers near the manager, Alan Cser. Hay observed that the man was wearing a "white gray hoodie," jeans, gloves, and had his face covered with a dark bandanna and sunglasses. He described the man's height as 6'2" to 6'5". Hay observed from the visible portion of his face that he

2

was African-American and noted a strong odor of "cheap cologne." He described seeing light pigmentation on the man's right temple. The man held a small, black handgun and kept his arms at his sides during the robbery. Cser placed money into a Dollar General bag and gave it to the man. As the robber was exiting, he told Hay and Cser to get on the ground.

{¶6} Alan Cser, the store manager of Dollar General, testified, via deposition, about the February 22 incident. On that date, he was behind a register when a man with a gun, which Cser believed was black, approached him. The man held a gun to his side and nodded his head toward it. Cser described his clothing in a manner consistent with Hay, estimated his height at 6'6", and noted that he was African-American. The robber asked for money from the safe and the register to be placed in a Dollar General bag. Cser was then ordered to the ground and the robber left.

{¶7} On March 19, 2016, Hay was again working at Dollar General when, at approximately 9:50 p.m., a man entered the store, wearing all black, a hoodie, gloves, sunglasses, and a sheer covering over his face. Hay again described the man as African-American and smelling of a "cheap cologne." Hay testified that he recognized the voice from the prior robbery and "had no doubt" it was the same man. He also stated that the robber held a gun around his waistband.

{¶8} Shelley Simmons, an assistant manager at Dollar General, was present on March 19. While performing closing procedures, she was kneeling on the floor near the safe and noticed a man approach the counter, holding a gun, which Simmons described as "dark gray" and held near his waistband. The robber grabbed a Dollar General bag and told her to put all of the money in it. She did not notice his race

3

because his face was covered with a dark material.

{¶9} Virginia Brennan lives on Madison Avenue in Painesville, located "two houses east" of the Dollar General. Around early April 2016, she saw a dark item in her yard, waited a few weeks before investigating, and noticed it was two articles of clothing. According to her testimony, a few weeks later, she called the Sherriff's Department. She did not believe the clothing had been there for a long time prior to when she noticed it.

{¶10} Detective John Kelly of the Lake County Sheriff's Office investigated the two robberies. He reviewed surveillance videos of surrounding businesses, including footage from the Park Road Bar and Grill located across the street from the Dollar General. In the video from both days, he observed a vehicle back into a parking spot in the Park Road Bar parking lot. On February 22, a person, believed to be the suspect based on his clothing and time of the robbery, was seen exiting the Dollar General, walking about in the area around the Dollar General, and ultimately entering a blue or teal Buick or Oldsmobile vehicle with hubcaps in the Park Road Bar parking lot. On March 19, the video showed the suspect enter the vehicle about an hour after the robbery, and Kelly believed he had been hiding while police were searching the area following the robbery. The vehicle appeared to be the same or similar to the one used in the prior robbery. Deputy Zachary Ropos of the Lake County Sheriff's Office viewed the March 19 videos and made similar observations.

{¶11} After police were contacted regarding the items in Brennan's yard, Kelly collected two black t-shirts, sized 4XL and 5XL. Both items were turned inside out. He noted that there was a strong odor on the shirts, which could possibly be cologne.

4

{¶12} Dr. Karen Zavarella, a forensic analyst at the Lake County Crime Lab, took DNA samples from the two black t-shirts recovered from Brennan's yard. A swab from the t-shirts was run through the database and a "consistent match" was made to Jackson. She opined that he was the major contributor.

{¶13} After DNA testing revealed Jackson's name, Detective Kelly drove past his residence and observed a teal green or blue 2000 Buick LeSabre with silver hubcaps. He searched the BMV records and discovered Jackson's height was listed at 6'3". Records showed the Buick had been registered to a family member of Jackson's. Upon conducting a search of Jackson's house, Horseshoe Casino receipts were found from the "days after the robbery." A black pellet gun was recovered in a stove inside the garage, which Dr. Zavarella tested and found to contain Jackson's DNA.

{¶14} At the close of the presentation of evidence, Jackson moved for acquittal, which motion was denied. On August 25, 2017, the jury found Jackson guilty of Counts Five and Six (relating to the March 19 Aggravated Robbery and Robbery) and not guilty of the remaining four counts. The verdict was memorialized in a September 1, 2017 Judgment Entry.

{¶15} A sentencing hearing was held on September 25, 2017. The court merged the Robbery offense into Aggravated Robbery and ordered Jackson to serve a term of seven years in prison, consecutive with sentences for offenses committed in other counties. The trial court filed its Judgment Entry of Sentence on September 29, 2017.

{¶16} Jackson timely appeals and raises the following assignments of error:

{¶17} "[1.] The trial court erred when it denied defendant-appellant's motion to

5

sever offenses for trial, in violation of his rights to due process of law under the Fifth and Fourteenth Amendments of the U.S. Constitution and Sections 10 and 16, Article I of the Ohio Constitution.

{¶18} "[2.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).

{¶19} "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶20} In his first assignment of error, Jackson argues that the trial court erred by denying his motion to sever the offenses that occurred on February 22 from those occurring on March 19.

{¶21} Crim.R. 8(A) provides, in pertinent part: "Two or more offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." However, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment * * *, or by such joinder for trial together of indictments * * *, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14. Joinder of offenses is "favored in the law" as it conserves judicial resources, "lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).

6

**{¶22}** To prevail on a claim that the lower court erred in denying a motion to sever, the defendant "must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial." *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992). This court has held that when a defendant fails to renew a motion to sever at the conclusion of the presentation of all of the evidence at trial, as occurred here, it is waived and the matter is reviewed for plain error. *State v. Appenzeller*, 11th Dist. Lake No. 2006-L-258, 2008-Ohio-7005, ¶ 75-76. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001).

**{¶23}** "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶ 60, citing *Schaim* at 59. In the present matter, the evidence would have been admissible as "other acts" evidence under Evid.R. 404(B) and was also simple and direct. Thus, under either ground, no prejudice was demonstrated.

**{¶24}** Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity

7

therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "Other acts" evidence is admissible in demonstrating the identity of the perpetrator when it shows that he "committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes." (Citation omitted.) *State v. Shedrick*, 61 Ohio St.3d 331, 337, 574 N.E.2d 1065 (1991).

**{¶25}** The facts of the two robberies helped to demonstrate the identity of the perpetrator due to similarities in the way the crimes were committed. In both instances, which occurred within less than a month of each other at the same store, the robber's identity was concealed with a hood, face covering, and sunglasses, and the robbery was committed with a visible gun held at the perpetrator's side but not pointed at the victims. The robber went immediately to the area of the registers near the safe and had the money placed in a Dollar General plastic bag. Both robberies were committed in a timeframe less than an hour from store closing and the perpetrator drove the same or a similar vehicle, which was backed into a parking space at an establishment across the street. A witness present for both robberies also noted that the suspect had similar mannerisms, the same voice, and wore "cheap cologne." Evidence of either robbery would have been admissible at a trial on the other under Evid.R. 404(B) since the "other act" tended to establish a similar plan as well as the perpetrator's identity. *See State v. Tipton*, 10th Dist. Franklin Nos. 04AP-1314 and 04AP-1315, 2006-Ohio-2066, ¶ 29 (evidence of a separate robbery was permissible "other acts" evidence when it occurred near the first robbery and involved the use of a handgun and a demand of money from

8

the register and safe).

**{¶26}** Jackson's argument that joinder allowed the State to obtain a conviction where one was not otherwise possible, resulting in prejudice, lacks merit for the reasons discussed above. Further, to the extent that he cites *Schaim* for this proposition, that case is distinguishable in that there was no question of the identity of the perpetrator and the court specifically noted the limits placed on the use of "other acts" evidence in prosecutions for "sexual offenses." *Id.*, 65 Ohio St.3d at 59-60, 600 N.E.2d 661.

**{¶27}** Even if the evidence had not been otherwise admissible, a finding that the evidence in the present matter was simple and direct, and joinder was not required, is consistent with the past precedent of this court. Each of the two robberies was described chronologically and separately, with surveillance footage, making it simple to distinguish the evidence for each crime. Importantly, it is evident that the jury was able to separate the two incidents and factual scenarios giving rise to the individual crimes, as Jackson was acquitted of four of the six charges. As this court has explained under similar circumstances where the defendant was tried for multiple robberies, "[a] defendant does not establish prejudice resulting from the joinder of criminal charges where the evidence presented by the state is direct and uncomplicated and the jury demonstrates its ability to segregate the proof on each charge." *State v. Smith*, 11th Dist. Trumbull No. 91-T-4610, 1993 WL 407301, *8 (Sept. 30, 1993). Since the defendant in *Smith* was acquitted of one robbery, convicted of another, and found guilty of a lesser included offense for the third, "[t]he jury * * * demonstrated their ability to carefully sort out the evidence relating to these three separate robberies and determine the defendant's guilt or innocence as to each separately." *Id.*; *also State v. Brooks*, 44

9

Ohio St.3d 185, 195, 542 N.E.2d 636 (1989) ("[t]he jury demonstrated its ability to segregate the proof on each charge" by acquitting the defendant of some of the charges).

{¶28} The first assignment of error is without merit.

{¶29} We will consider Jackson's second and third assignments of error, which relate to the weight and sufficiency of the evidence, jointly.

{¶30} Crim.R. 29(A) provides, in pertinent part: "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶31} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be

reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

**{¶32}** To convict Jackson of Aggravated Robbery, the State was required to prove, beyond a reasonable doubt, that he did, "in attempting or committing a theft offense * * * [h]ave a deadly weapon on or about [his] person or under [his] control and either display the weapon [or] brandish it * * *." R.C. 2911.01(A)(1). For the offense of Robbery, the State was required to prove that in attempting or committing a theft offense, he did "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another." R.C. 2911.02(A)(2).

**{¶33}** Based on a review of the entire record, we find that the convictions were supported by the weight of the evidence and, thus, there was also sufficient evidence to submit the charges to the jury. There is no dispute that the elements of the robbery offenses were met, with the offender stealing money while brandishing a weapon. The only real issue disputed is whether Jackson was the perpetrator.

**{¶34}** As to the incident for which Jackson was convicted, the March 19, 2016 robbery, the testimony demonstrated that a man of Jackson's race and approximate height robbed the Dollar General while wearing black clothing. Testimony revealed that a few weeks after the robbery, Brennan, who lives two doors down and less than 500 feet from the Dollar General, found black clothing in her backyard. That clothing ultimately was found to contain Jackson's DNA. Further, a black gun, which was

11

consistent with the description of at least one witness, with Jackson's DNA was recovered from his home. Casino receipts from "the days after the robberies" were also recovered in the home. Officer testimony demonstrated that a teal or blue Buick with silver hubcaps was seen in Jackson's driveway, had been registered to his family member, and that it was consistent with the type of car police believed the suspect had driven based on surveillance footage. This evidence supports his convictions.

{¶35} Jackson points to several arguments he believes weigh in his favor and against conviction. First, he notes that the witnesses provided conflicting descriptions of the gun, with one describing it as black and another as "dark gray." It is noteworthy that the witness who described the gun as gray rather than black was noted to have been quite upset by the robbery, while the other witness, Hay, had experienced a similar robbery just a few weeks before. Regardless, the jury was entitled to look at all of the testimony and determine whether it was consistent with the weapon recovered, as well as whether the witnesses were credible and reliable as to this issue. When examining witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). "The factfinder may believe all, some, or none of the testimony of each witness appearing before it." *State v. Urbancic*, 11th Dist. Lake No. 2010-L-034, 2011-Ohio-1011, ¶ 38. This analysis also applies to Jackson's assertion that differing testimony was given about the perpetrator's dominant hand (which primarily arose from testimony about the first robbery, for which Jackson was acquitted).

12

**{¶36}** Further, Jackson emphasizes inconsistencies in Hay's description of the perpetrator during the two separate robberies, noting that he described the robber in the second incident as having a slimmer build, and noticed an area of lighter pigmentation on the face of the man who committed the first robbery but not the second. Of note is that Hay testified that during the second robbery, he "didn't look at [the perpetrator] as much as the first time." In any event, the jury acquitted Jackson as to all charges related to the first robbery and, thus, the relationship between the description of the robber in the two incidents is of little relevance here. We fail to see how it weighs against any of the evidence demonstrating Jackson committed the second robbery, especially since the limited physical description of the suspect in the second robbery matched Jackson and the conviction was also supported by his DNA on the t-shirts and the vehicle driven by the perpetrator.

**{¶37}** Jackson next argues that the testimony of Brennan, who discovered the clothing in her yard, was "unreliable," given that she was unaware of exactly when the clothing was discovered and where she was when she saw it. He also contends the clothing had no connection with the robbery. Brennan did initially state that the items were recovered in April, although she expressed uncertainty upon cross-examination. It is hardly surprising that Brennan did not remember the exact date and location she was when she saw the clothing in her yard, as such a discovery is not a particularly noteworthy event and she did not initially find it concerning enough to immediately contact police. Moreover, while Jackson asserts there was no evidence that the clothing was connected to the robbery, the facts that it was the same color that the robber wore, was recovered by police within three weeks of the robbery according to the

13

testimony of Detective Kelly, was found only two houses down from the location robbed, was in an area where the K-9 officer had tracked the suspect, and it had a strong odor that Kelly believed could have been cologne, provide circumstantial evidence that weighs in favor of a conclusion that it was worn by the robber. "[C]ircumstantial evidence and direct evidence inherently possess the same probative value." (Citation omitted.) *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997).

{¶38} Jackson finally emphasizes that there was no positive identification of the perpetrator. While it is accurate that the witnesses could not provide a positive identification of the robber's face since it was covered, physical descriptions of his height were significant, since they were consistent among witnesses and Jackson is taller than an average man. The DNA and circumstantial evidence were sufficient to support a conviction in the absence of a physical identification.

{¶39} Given a review of all the evidence presented at trial, Jackson's convictions were supported by both the weight and sufficiency of the evidence.

{¶40} The second and third assignments of error are without merit.

{¶41} For the foregoing reasons, the court's ruling on the Motion for Severance and Jackson's convictions in the Lake County Court of Common Pleas are affirmed. Costs to be taxed against appellant.


CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.