OPINION
{¶ 1} Defendant-Appellant, John T. Mattox, III, appeals his conviction, following a jury trial, in the Ashtabula County Court of Common Pleas, on one count of Failure to Comply with an Order or Signal of a Police Officer, a felony of the third degree, in violation of R.C. 2921.331(B) and (C)(5)(a)(ii). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} The charges arose from an approximately 12 mile pursuit, which occurred on February 12, 2004.
 {¶ 3} At approximately 11:30 a.m., Trooper Ron Bornino of the Ohio State Highway Patrol was traveling northbound on State Route 11 in Dorset Township, Ashtabula County, Ohio, when he observed a tan Toyota Camry, operated by Mattox, traveling southbound on Route 11 at a high rate of speed. Readings from the radar in Trooper Bornino's patrol vehicle indicated that appellant's vehicle was traveling eighty-nine miles per hour at the time his vehicle passed the patrol vehicle. The speed limit on this particular section of Route 11 is sixty-five miles an hour. Trooper Bornino turned around in a nearby median crossover and attempted to catch up to Mattox's vehicle in order to issue a citation for Speeding.
 {¶ 4} Trooper Bornino caught up to Mattox's vehicle near the exit ramp to State Route 6, and activated his overhead lights "in an attempt to get the vehicle stopped." Trooper Bornino testified that once the overhead lights are activated in his patrol vehicle, a video camera located on his dashboard is automatically activated.
 {¶ 5} At the end of the exit ramp, Mattox ran through the stop sign and continued westbound on Route 6. Trooper Bornino activated his siren and wireless microphone and gave chase.
 {¶ 6} During the pursuit along Route 6, Mattox twice exceeded speeds of 110 miles per hour, encountering several vehicles traveling in the opposite direction, and passed a tractor trailer truck while traveling in a "no passing" zone.
 {¶ 7} Upon approaching the intersection of Route 6 and Route 45, Mattox activated his turn signal and attempted to slow down enough to execute a turn onto Route 45, but was carrying too much speed, and instead ran through the stop sign. Mattox turned into a parking lot located on the northwest corner of the intersection, turned around, and made a diagonal path through the intersection onto southbound Route 45, with Trooper Bornino in pursuit. Mattox resumed traveling at a high rate of speed along Route 45, before signaling a turn onto Dodgeville Road, in Rome Township, Ohio, and proceeding east.
 {¶ 8} Mattox traveled eastbound on Dodgeville Road for a distance of approximately two miles before signaling and turning into the driveway of his residence. Trooper Bornino pulled his patrol vehicle into the driveway, blocking Mattox's vehicle. Mattox exited his vehicle with his hands raised, and Trooper Bornino ordered him to the ground. Mattox complied with Trooper Bornino's order. Appellant purportedly suffered a seizure prior to being taken into custody, and was transported to the Ashtabula County Medical Center as a result.
 {¶ 9} Mattox was subsequently indicted by the Ashtabula County Grand Jury on one count of Failure to Comply with an Order or Signal of a Police Officer. Following a plea of not guilty, the matter proceeded to jury trial on November 16, 2004. Following a two day trial, the jury rendered a verdict of guilty as charged.
 {¶ 10} Following Mattox's conviction, the trial court ordered a presentence investigation report. After an initial unsuccessful attempt to complete the presentence investigation report due to Mattox's failure to cooperate with a representative of the Adult Parole Authority, and his claim that he suffered from schizophrenia, the trial court ordered a competency and sanity evaluation and stayed sentencing proceedings. As a result of the evaluation, the trial court found Mattox incompetent for sentencing and ordered him to undergo treatment at Heartland Behavioral Healthcare in Massillon, Ohio.[1]
 {¶ 11} On June 6, 2005, Mattox was sentenced to three years of Community Control Sanctions and a fine of $250. Mattox timely appealed, assigning the following as error:
 {¶ 12} "[1.] The trial court erred in not sua sponte
ordering a hearing to determine appellant's competency to stand trial.
 {¶ 13} "[2.] Trial counsel provided ineffective assistance when it failed to ask for a competency hearing to determine appellant's fitness to stand trial.
 {¶ 14} "[3.] The jury's finding that appellant was guilty of failure to comply with signal or order of a police officer, and [that appellant] did cause a substantial risk of physical harm to persons or property was not supported by sufficient evidence.
 {¶ 15} "[4.] The jury's finding that appellant was guilty of failure to comply with signal or order of a police officer, and [that appellant] did cause a substantial risk of serious physical harm to persons or property was against the manifest weight of the evidence."
 {¶ 16} In his first assignment of error, Mattox argues that the trial court's failure to sua sponte raise the issue of his competency to stand trial denied him the right to due process. We disagree.
 {¶ 17} It is well-settled that a trial of a defendant who is legally incompetent violates that defendant's right to a fair trial. See Pate v. Robinson (1966) 383 U.S. 375, 378; Drope v.Missouri (1975), 420 U.S. 162, 171; State v. Berry,72 Ohio St.3d 354, 359, 1995-Ohio-310.
 {¶ 18} In Ohio, this right is codified in R.C. 2945.37 which provides, in relevant part, as follows:
 {¶ 19} "In a criminal action * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion." R.C.2945.37(B). Under the statute, a defendant is presumed to be competent to stand trial unless it is proven, by a preponderance of the evidence, that the defendant is incapable of understanding the nature and objective of the proceedings or of assisting in his defense. R.C. 2945.37(G). Prior to trial, the burden is on the defendant to demonstrate sufficient evidence to place the issue of his competency in question. State v. Bailey (11th Dist. 1992), 90 Ohio App.3d 58, 67.
 {¶ 20} In the case sub judice, the issue of Mattox's competency was not raised prior to trial. "[O]nce a trial begins, R.C. 2945.37(A) requires a trial court to hold a hearing on the issue of incompetency `only for good cause shown.'" State v.Reeder (Nov. 30, 1998), 12th Dist. No. CA97-12-013, 1998 Ohio App. LEXIS 5611, at *12 (citation omitted). Accordingly, a trial court's decision whether to hold a competency hearing once the trial has commenced is a matter within the trial court's discretion and will not be reversed absent evidence that the court abused its discretion. State v. Rahman (1986),23 Ohio St.3d 146, 156.
 {¶ 21} An abuse of discretion is more than an error of law or judgment. Rather, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169 (citation omitted). Reversal, under an abuse of discretion standard, is not warranted merely because appellate judges disagree with the trial judge or believe the trial judge erred. Id. Reversal is appropriate only if the abuse of discretion renders "the result * * * palpably and grossly violative of fact and logic [so] that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984),15 Ohio St.3d 164, 222 (citation omitted).
 {¶ 22} The United States Supreme Court has defined the test for an accused's competence to stand trial as whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States (1960),362 U.S. 402. Furthermore, "[t]he failure to hold a competency hearing is harmless error where the defendant proceeds to participate in the trial, offers his own testimony in defense and is subject to cross-examination, and the record fails to revealsufficient indicia of incompetency." State v. Bock (1986),28 Ohio St.3d 108, at paragraph one of the syllabus (emphasis added).
 {¶ 23} Although the Supreme Court provided no specific guidelines as to what constituted the weight of evidence necessary to demonstrate a "sufficient indicia of incompetency" meriting a sua sponte hearing, the following considerations are considered relevant: "(1) doubts expressed by counsel as to defendant's competence; (2) evidence of irrational behavior; (3) the defendant's demeanor at trial; and (4) prior medical opinion relating to competence to stand trial." State v. Rubenstein
(1987), 40 Ohio App.3d 57, 60-61; State v. Dodrill (Dec. 16, 1994), 11th Dist. No. 93-T-4856, 1994 Ohio App. LEXIS 5702, at *6.
 {¶ 24} On appeal, Mattox avers that a sua sponte hearing on his competence was required, based upon his erratic behavior both in court and during preliminary proceedings. Specifically, he points to evidence at the preliminary hearing, where he interrupted proceedings to request that he be allowed to leave the courtroom because "he was very angry" with Trooper Bornino, because he "tried to kill me," and the fact that the trial judge, at the preliminary hearing warned Mattox against his potentially contemptuous behavior in the court. Mattox also points to a comment he made during an in-chambers hearing prior to the commencement of trial, where the judge ruled on Mattox' motion to dismiss, that the proceedings were "unconstitutional," and various comments he made during the trial itself, as evidence that the issue of his competency should have been called into question by the trial court. The question for this court is whether or not these incidents, standing alone, were "`sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." Berry, 72 Ohio St.3d at 359.
 {¶ 25} Considering the Rubenstein factors, we note that there is no evidence in the record indicating that Mattox's defense counsel expressed any doubts as to his competence to stand trial, nor was there any prior medical opinion relating to his competence to stand trial. Thus, Mattox relies solely on his allegedly irrational behavior during various pretrial proceedings and his demeanor at trial to create the inference that he was incompetent to stand trial.
 {¶ 26} With respect to Mattox's comments made during the trial, the record reveals the following from a hearing on a motion to dismiss held prior to the commencement of the jury trial:
 {¶ 27} "The Court: I have a pro se motion filed by the Defendant, John Mattox, to dismiss the charges, and now he's in court with his Attorney Hobart Shiflet * * *. Anything on behalf of this motion, Mr Shiflet?
 {¶ 28} "Mr. Shiflet: Your Honor, I'm not aware of even the contents of that motion. Mr Mattox filed it himself, and I would suggest that probably he should speak to that.
 {¶ 29} "Also, I would note that yesterday morning I did file a motion to withdraw as counsel of record. This was after a discussion with Mr. Mattox on Saturday, and he indicated that he was in agreement with that motion; that he wished to represent himself in this matter, I believe is how I took that * * *.
 {¶ 30} "The Court: All right. Mr. Mattox, is it true that you want to represent yourself in this jury trial?
 {¶ 31} "The Defendant: Well, not actually. That is not the truth. It's just I've been displeased with Hobart's service up to this time. Um, I've had to retrieve the medical records on my own, I've had to do most of the case work on my own, but I will not represent myself in a jury trial.
 {¶ 32} "The Court: Well, this case was set for jury trial on July 10, 2004, and that's just a little over three-and-a-half months ago * * *. You filed your motion to dismiss all charges yesterday, November 15, 2004, and Mr. Shiflet also filed his motion to withdraw also yesterday * * *. Is there anything else you have to say concerning these motions?
 {¶ 33} "The Defendant: Um, not only the reason I have filed this motion is because several of my constitutional rights have been violated, and federal charges have been filed against Trooper R.E. Bornino in federal court.
 {¶ 34} "The Court: Well, that has no bearing on this trial.
 {¶ 35} "The Defendant: And in addition, sir, there is strong evidence that exists in this case that the evidence has been tampered with. The actual official transcript does not coincide with the actual tape of the preliminary hearings in which all the evidence was contained.
 {¶ 36} "The Court: All right. Well, anything further?
 {¶ 37} "The Defendant: No, sir. I rest.
 {¶ 38} "The Court: I'm overruling your motions. This case, we'll be starting our trial probably in about thirty minutes or so, and I should advise you that I will have some extra deputies in the courtroom in the event there is any sort of outbursts or acting up or anything on your part, so you are warned right now.
 {¶ 39} "The Defendant: Sure, sure. Yes, sir.
 {¶ 40} "The Court: And this case will proceed to trial, and in the event there is something of that nature, then I will be prepared to even shackle you and gag you. We're going to have this trial today; you understand that?
 {¶ 41} (The Defendant nodded affirmatively.)
 {¶ 42} "The Court: Any questions?
 {¶ 43} "The Defendant: That's fine, but it's unconstitutional.
 {¶ 44} "The Court: Well, I have nothing —
 {¶ 45} "The Defendant: The higher court and the lower court —
 {¶ 46} "The Court: Wait a minute, wait a minute.
 {¶ 47} "The Defendant: Should abide by the Constitution.
 {¶ 48} "The Court: You be quiet. You be quiet when I'm talking. There is no prohibition on this case going to trial. I don't know what you filed in federal court. This case is still pending on my docket. It's been pending for three-and-a-half months.
 {¶ 49} "The Defendant: Well, get rid of it. It's unconstitutional.
 {¶ 50} "The Court: I'm overruling your motions.
 {¶ 51} "The Defendant: Well, I'll see you in court, just to come and see Judge Wynn.[2]
 {¶ 52} "The Court: What I'm telling you is, if we have any outbursts like this in this courtroom in the presence of the Jury, you'll be shackled and gagged, is that clear?"
 {¶ 53} There is no indication from this colloquy that Mattox lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," or lacked "a rational as well as factual understanding of the proceedings against him." Dusky, 362 U.S. 402. To the contrary, as the foregoing colloquy demonstrates, Mattox was aware of the charges against him and took an active role in defending himself, including the filing of a pro se motion to dismiss. This, along with Mattox' contention that he did most of the case work, including retrieving medical records to assist his defense, exhibits that he had a "rational and factual understanding of the proceedings against him." Furthermore, the fact that Mattox was able to testify in aid of his defense and was subject to cross-examination likewise supports this conclusion.
 {¶ 54} While the angry and accusatory outbursts which Mattox points to in the record may indicate mental illness or emotional instability, they do not, as a matter of law, indicate that he was incompetent. Courts have consistently held that "`mental illness' does not necessarily equate with the definition of legal incompetency." Berry, 72 Ohio St.3d 354, at the syllabus. "Incompetency must not be equated with mere mental or emotional instability or even outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." Bock, 28 Ohio St.3d at 110; State v. Tong (Mar. 10, 1994), 8th Dist. No. 64903, 1994 Ohio App. LEXIS 894 at *10; R.C.2945.37(F). Moreover, deference on the determination of such issues is best granted to those "who see and hear what goes on in the courtroom." State v. Skatzes, 104 Ohio St.3d 195,2004-Ohio-6391, at ¶ 157, citing State v. Cowans,87 Ohio St.3d 68, 84, 1999-Ohio-250. We cannot say, based upon the record before us, that Mattox's conduct was "totally inconsistent with any effective defense to the crime." State v. Archie, (Sep. 27, 1990), 10th Dist. No. 89AP-804, 1990 Ohio App. LEXIS 4275, at *14. In sum, there is nothing in the record upon which we can conclude that the trial court committed reversible error by failing to raise the issue of Mattox's competency to stand trial sua sponte. Mattox's first assignment of error is without merit.
 {¶ 55} In his second assigned error, Mattox contends that his defense counsel was ineffective for failing to raise the issue of his competency prior to trial.
 {¶ 56} In determining whether trial counsel's assistance was so ineffective as to justify a reversal of a defendant's conviction, a criminal defendant must satisfy the two-part test set forth in Strickland v. Washington (1984), 466 U.S. 668. To establish a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 687.
 {¶ 57} With respect to the first factor, "the proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Regarding the second factor, the defendant bears the burden of showing that he was prejudiced by counsel's deficient performance and "must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, at paragraph three of the syllabus.
 {¶ 58} In the case sub judice, there is nothing in the record which would indicate that counsel had any greater knowledge of Mattox's alleged irrational behavior than did the trial court. Since we have already concluded in Mattox's first assignment of error that there were insufficient indicia of incompetence to warrant a hearing, we conclude that Mattox's counsel was not ineffective in failing to raise the issue prior to trial. See,In re Wood, 9th Dist. No. 04CA0005-M, 2004-Ohio-6539, at ¶ 11
(where there is insufficient evidence in the record to conclude that a defendant was incompetent, "[a]ppellant cannot satisfy the prejudice prong of his ineffective assistance of counsel claim");Elyria v. Bozman, 9th Dist. No. 01CA007899, 2002-Ohio-2644, at ¶ 24.
 {¶ 59} Appellant's second assignment of error is without merit.
 {¶ 60} In his third assignment of error, Mattox claims that his conviction was based on insufficient evidence. In particular, Mattox argues that the state failed to prove that Mattox created a "substantial risk of serious physical harm to persons or property," since there was no evidence introduced at trial indicating Trooper Bornino was ever in danger, or that Mattox ever lost control of his vehicle. We disagree.
 {¶ 61} A challenge to the sufficiency of the evidence raises a question of law; thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee
(Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). The relevant inquiry when testing the sufficiency of the evidence is whether, after reviewing the evidence and the inferences reasonably drawn from it in the light most favorable to the prosecution, any rational trier of fact could find all elements of the offense proven beyond a reasonable doubt. State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d 335, 345, 2001-Ohio-57;State v. Wallen (1969), 21 Ohio App.2d 27, 35.
 {¶ 62} In the case sub judice, Mattox was charged with Failure to Comply with an Order or Signal of a Police Officer. The statute provides, in relevant part, that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." R.C.2921.331(B).
 {¶ 63} In most circumstances, a violation of R.C. 2921.331(B) is a misdemeanor of the first degree. However, a violation of R.C. 2921.331(B) becomes a felony of the third degree, upon proof, beyond a reasonable doubt, that "[t]he operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property." R.C. 2921.331
(C)(5)(a)(ii). This court has held that any factor that serves to elevate the degree of a crime is an element of the crime, which must be proven beyond a reasonable doubt. State v. Greitzer,
11th Dist. No. 2003-P-0110, 2005-Ohio-4037, at ¶ 47. Accordingly, viewing the evidence in the light most favorable to the prosecution, we must determine "whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury." Schlee, 1994 Ohio App. LEXIS 5862, at *13.
 {¶ 64} The Revised Code defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).
 {¶ 65} "Serious physical harm to persons" is defined as any of the following:
 {¶ 66} "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 67} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 68} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 69} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 {¶ 70} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C.2901.01(A)(5).
 {¶ 71} "Serious physical harm to property" is defined as that which either:
 {¶ 72} "(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace; [or]
 {¶ 73} "(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time." R.C. 2901.01(A)(6).
 {¶ 74} In the instant case, the state presented testimony from Trooper Bornino and a videotape from his patrol car that showed Mattox engaging in a six-minute chase which covered approximately ten to twelve miles across three townships in Ashtabula County, at speeds exceeding one hundred and ten miles per hour. The videotape revealed that Mattox passed three vehicles traveling in his own lane, including passing a tractor trailer truck in a no-passing zone, and that during the course of the chase, Mattox encountered at least ten vehicles traveling in the opposite direction, some of which slowed down and pulled over to allow Mattox to speed past. Evidence also showed that Mattox crossed several intersections during the pursuit, including two in which he ran through stop signs. After passing through the second of these intersections, Mattox slowed down enough to turn around in a parking lot before passing through the intersection a second time without stopping. Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable trier of fact could conclude beyond a reasonable doubt that Mattox created a substantial risk of serious physical harm to persons and property. Mattox's third assignment of error is without merit.
 {¶ 75} In his fourth assignment of error, Mattox challenges his conviction as being against the manifest weight of the evidence. We disagree.
 {¶ 76} Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175. "[T]he weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967),10 Ohio St.2d 230, at syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony." Tompkins,78 Ohio St.3d at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. "The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook, J., concurring).
 {¶ 77} Moreover, a finding on review that the jury's verdict was against the manifest weight of the evidence must be reserved only for those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable jury could have found the defendant guilty. State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin,20 Ohio App.3d at 175.
 {¶ 78} Based upon the aforementioned evidence, we likewise conclude that the jury's verdict was not against the manifest weight of the evidence. The undisputed facts that Mattox led police on a high-speed chase over several miles in the middle of the day, running stop signs and passing numerous vehicles, some in no-passing zones, created a substantial risk of serious physical harm to persons and property. "[T]he failure of [a]ppellant to engage in a `near collision' speaks to nothing more than Appellant's good luck and the careful driving on the part of other motorists on the road; such an assertion is irrelevant * * * because it fails to speak to the level of risk that Appellant's reckless driving created." State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 19; see also, State v.Robinson, 7th Dist. No. 04 JE 15, 2005-Ohio-1343, at ¶ 33
(citation omitted). Accordingly, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Appellant's fourth assignment of error is without merit.
 {¶ 79} Based upon the foregoing analysis, we affirm the judgment of the Ashtabula County Court of Common Pleas.
Ford, P.J., Rice, J., concur.
[1] Following the court's order requiring Mattox to undergo treatment prior to sentencing, the court received a letter from Gary Sales, Staff Psychiatrist at Heartland Behavioral Healthcare. In reviewing both the competency and sanity evaluations from Dr. Gazley of the Forensic Psychiatric Center of Northeast Ohio, it was Dr. Sales' opinion, based upon his interpretation of these reports, that Mattox was competent to be sentenced and that the court's prior order requiring Mattox to undergo treatment prior to holding the sentencing hearing was unnecessary. Following receipt of Dr. Sales' letter, the trial court elected to go forward with the sentencing hearing.
[2] Judge Wynn presided over Mattox's preliminary hearing in a separate court, the one in which appellant accused Trooper Bornino of trying to kill him and attempted to request that he be excused from the courtroom because he was "very angry with him." The matter of whether or not the trial judge knew of these outbursts is purely conjecture. However, even if we were to assume, arguendo, that the trial judge was aware of Mattox's propensity for outbursts based upon his conduct at the preliminary hearing, this behavior is ultimately irrelevant, based upon the foregoing analysis.