[Cite as *State v. Peric*, 2019-Ohio-1164.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2018-L-089** **2018-L-090** |
| ANTE T. PERIC, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals from the Willoughby Municipal Court, Case Nos. 2017 CRB 04141 and 2017 CRB 02912.

Judgment: Affirmed.

*Richard J. Perez*, City of Willoughby Prosecutor, and *Leslie S. Johns*, 4230 State Route 306, Suite 240, Willoughby, OH 44094 (For Plaintiff-Appellee).

*Mandy J. Gwirtz*, Mandy Gwirtz, LLC, 20050 Lakeshore Boulevard, Euclid, OH 44123 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Ante T. Peric, appeals from the judgment of the Willoughby Municipal Court, denying his Motion for Competency Evaluation, and from his convictions for Violating a Protection Order. The issues to be determined by this court are whether a trial court errs in denying a motion for competency evaluation when there is no doctor's testimony as to the defendant's competency, whether offenses must be joined when they arise from distinct events on different dates, and whether convictions for Violating a Protection Order are supported by the evidence when the

defendant repeatedly contacts the victim, although some contacts referenced their children and visitation. For the following reasons, we affirm the judgment of the lower court.

{¶2} On August 7, 2017, a Complaint was filed in Willoughby Municipal Court Case No. 17CRB02912, charging Peric with Violating a Protection Order, a misdemeanor of the first degree, in violation of R.C. 2919.27(A)(1), for conduct occurring between July 3 and August 6, 2017. A second Complaint was filed on August 10, 2017, for the same offense in Case No. 17CRB0249, for conduct occurring on August 9, 2017. A third Complaint was filed November 14, 2017, in Willoughby Municipal Court Case No. 17CRB04141, charging Peric with an additional count of the same offense, for conduct occurring on November 8, 2017.

{¶3} Following various pro se filings and the appointment of defense counsel, on May 3, 2018, Peric, through counsel, filed a Motion for Competency Evaluation, to which was attached a letter from Peric's general physician, Dr. Beena Sreekumar. The letter stated that Peric "is not able to make any important decisions until after his consultation with a neurologist." The trial court set the matter for a hearing at which both parties would be permitted to submit evidence.

{¶4} At the hearing, defense counsel presented medical records which demonstrated Peric had recently suffered from a seizure, had a history of seizure disorder, and had been referred to an epilepsy specialist. The specialist recommended hospitalization to determine the proper treatment. Another letter from Dr. Sreekumar was presented, in which she stated that Peric had reported difficulty remembering and focusing after his seizure and, in her opinion, "he is unable to properly understand and

make suitable decisions in complex matters such as legal proceedings" at the present time. Defense counsel also contended that Peric had been unable to assist in his defense because he is "focused on things that we can't do because it's impossible to be done." The court inquired of Peric regarding the court proceedings. Peric indicated that he was "being accused of something that didn't happen." Peric expressed that he believed he would be able to go home to his children regardless of whether he was found innocent or guilty, but also indicated understanding that the court decides the result. He indicated a lack of trust in the courts, belief that he had been prosecuted unfairly, and was aware that his lawyer's role was to give assistance. He stated that sometimes his head hurts too much to talk about his case.

{¶5} On May 16, 2018, the trial court issued a Judgment Entry, noting that Peric had failed to present witnesses at the hearing. It found that Peric failed to raise a genuine question as to his competency.

{¶6} A jury trial was held on May 18, 2018. The following pertinent testimony was presented:

{¶7} Patrolman Gary Slay of the City of Willoughby Police Department testified that on August 6, 2017, Joy Peric reported a violation of a protection order she had against Ante Peric, stating he had called her five times on that date. Joy also indicated that on July 3, 2017, Peric had called her about 30 times, leaving 30 voicemails. Slay witnessed Joy's call logs, which showed Peric's number had called her and photographs of these logs were presented. Some of the voicemails were played for the jury, in which Peric stated that Joy would be "going to prison" due to her failure to allow phone calls between himself and their children. Slay testified that the protection order

3

became effective March 14, 2016, and he believed Peric was in violation since it provided that Peric was to communicate with Joy only through the Our Family Wizard application for issues concerning the minor children.

{¶8} On cross-examination, Slay could not recall if he checked the phone number Joy alleged to be Peric's to determine if it was his although he recognized Peric's voice in the voicemails.

{¶9} Patrolman Kyle Bucher of the Willoughby Police Department was dispatched to Joy's residence on August 9, 2017, at which time she informed him that Peric's phone number called her phone with FaceTime, which she did not answer. Bucher identified the number as belonging to Peric.

{¶10} Patrolman Terrell Travis Stevenson of the Willoughby Police Department testified that on November 8, 2017, Joy reported that Peric sent her a message through Our Family Wizard on that date about filing a federal lawsuit. He observed the message on her phone and believed this was impermissible under the protection order. On cross-examination, Stevenson indicated that in determining there was a violation he did not review the parties' custody arrangement.

{¶11} Joy Peric testified that she and Peric are going through divorce proceedings. She sought a protection order against Peric and the two entered into a mutual protection order, which became effective on March 14, 2016. Pursuant to her understanding, the parties were not to communicate except within the Our Family Wizard app solely for issues concerning the children. Effective June 7, 2017, pursuant to the agreement of the parties, Peric was permitted by court order to have FaceTime or telephone contact with the children, on Joy's phone, between 8:30 and 9 p.m. on

4

alternating days.

{¶12} Joy testified that on July 3, 2017, Peric called her numerous times between around 8:45 to 9 p.m. and continuing until 9:34 p.m. that night and left threatening and other messages. Regarding August 6, 2017, she testified that the two were ordered to use Our Family Wizard to communicate about the children and Peric sent a message which said: "You are to immediately comply with court order parenting time now! Quit taking the phone from the kids and turning it off you evil hateful bitch."

{¶13} On November 8, 2017, Peric sent her a message through Our Family Wizard titled "Federal Lawsuit Filed," which accused her and the police of lying, and stated that he had filed a federal lawsuit against her, that she had lied to take his children for financial gain, and "you need to know that unless you tell everyone you're going to go to prison."

{¶14} Following the conclusion of the prosecution's case, Peric moved for acquittal pursuant to Crim.R. 29, which motion was denied by the trial court.

{¶15} The defense called Maureen Kelly, the Clerk of Courts for Lake County. She testified regarding the docket and records for the Perics' domestic relations case. She identified a magistrate's decision that ordered phone contact between Peric and his children from 8:30 to 9 p.m. but noted that the docket contained a typographical error stating it was from 8:30 to 9:30 p.m., which was not corrected until April of 2018. Kelly testified that the magistrate's decision reflected it had been sent to both parties.

{¶16} At the conclusion of its case, the defense renewed the Crim.R. 29 motion, which was denied.

{¶17} On the same date, the jury found Peric guilty of two counts of Violating a

5

Protection Order for the incidents arising from Case No. 17CRB02912, occurring on July 3, 2017 through August 6, 2017, and Case No. 17CRB04141, occurring on November 8, 2017. He was acquitted of the third charge.

{¶18} A sentencing hearing was held on May 31, 2018, at which the court sentenced Peric to a term of 180 days in jail with 90 suspended for each of the two offenses, with the sentences to run consecutively.

{¶19} Peric timely appeals and raises the following assignments of error:

{¶20} "[1.] The trial court committed error when it denied defendant-appellant's motion for a competency evaluation.

{¶21} "[2.] The trial court committed plain error when it [failed to] sever the offenses for trial, in violation of his rights to due process of law under the Fourteenth Amendment of the U.S. Constitution and Sections 10 and 16, Article I of the Constitution.

{¶22} "[3.] The defendant-appellant's constitutional rights to due process and fair trial under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution were prejudiced by the ineffective assistance of counsel.

{¶23} "[4.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).

{¶24} "[5.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶25} In his first assignment of error, Peric argues that the trial court erred when it did not order a competency evaluation to be completed when a genuine question as to

6

competency was raised during the initial hearing.

**{¶26}** R.C. 2947.37(B) provides that, if the issue of the defendant's competence to stand trial is raised prior to the commencement of trial, "the court shall hold a hearing on the issue as provided in this section," which sets forth procedures such as the timing of the hearing and evidence to be presented. R.C. 2945.371(A) further provides that "[i]f the issue of a defendant's competence to stand trial is raised * * * the court may order one or more evaluations of the defendant's present mental condition * * *."

**{¶27}** In reading these competency statutes together, this court has held that they "support the inference that when the initial hearing on a competency motion is held, the trial court is only required to give the defendant, or his counsel, the chance to submit evidence on the issue." *State v. Bailey*, 90 Ohio App.3d 58, 67, 627 N.E.2d 1078 (11th Dist.1992). If the evidence presented at that initial hearing "raises a genuine question as to the defendant's competency, the court can order that one or more evaluations be performed. If it does not, the court can find the defendant competent and proceed to trial." *Id.*

**{¶28}** "When the issue of a defendant's competency is raised, it is within the trial court's discretion whether an evaluation should be conducted." *State v. Locke*, 11th Dist. Lake No. 2014-L-053, 2015-Ohio-1067, ¶ 102; *State v. Matharu*, 2d Dist. Montgomery No. 26985, 2017-Ohio-8251, ¶ 15 ("we review the decision of the trial court regarding competency evaluations for an abuse of discretion"). An abuse of discretion constitutes "failure to exercise sound, reasonable, and legal decision-making." *State v. Long*, 11th Dist. Lake No. 2017-L-094, 2018-Ohio-3013, ¶ 52, citing *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11

7

(8th Ed.2004).

{¶29} Since a defendant is presumed to be competent to stand trial, "at the initial hearing, the burden is upon the defendant, or his counsel, to submit enough evidence to put the question at issue." *Bailey* at 67; *State v. Hackathorn*, 11th Dist. Ashtabula No. 2004-A-0008, 2004-Ohio-6694, ¶ 19. "Ohio law expressly states that a defendant is presumed to be competent unless it can be demonstrated that he is incapable of understanding the proceedings against him or cannot fully assist in his defense." *State v. Tuff*, 11th Dist. Lake Nos. 2010-L-082 and 2010-L-083, 2011-Ohio-6846, ¶ 26.

{¶30} A hearing was held following Peric's request for a competency evaluation. At that hearing, no testimony was presented to establish that Peric's health conditions were causing the alleged lack of competency. A letter from his general physician was introduced but the court had no ability to inquire further into her opinion. While medical records did show that Peric had suffered from seizures, there was no testimony to demonstrate whether this caused him to be incompetent. Suffering from a physical or mental condition alone does not support a finding of incompetence. *Hackathorn* at ¶ 19. Further, while it was evident that Peric had been ordered not to drive or work for a period of time due to his seizures, this does not mean he was incapable of assisting in his defense. A brain disorder and seizures alone have not been found sufficient to render a defendant incompetent. *State v. Ramey*, 10th Dist. Franklin No. 96APA08-1044, 1997 WL 101666, *2 (Mar. 6, 1997).

{¶31} At the hearing, defense counsel stated various concerns with Peric's competency, emphasizing that he made "outrageous demands," such as repeatedly requesting dismissal. This does not prove he was unable to assist in his defense and is

8

not even particularly uncommon in criminal cases. Peric had been able to file various motions in the matter pro se prior to the recent appointment of counsel and could express the general role of the court and his understanding of the charges being faced. He knew he had been accused of violating a court order and confirmed that he understood that the judge could determine the outcome, although he believed he should be released from custody. He explained the role of a prosecutor and that defense counsel was to "give him assistance." While he was focused on the opinion that he was wrongfully accused and expressed distrust of police, lawyers, and the legal system, he was capable of understanding the general process of the trial. Deference on issues relating to the defendant's behavior and competence "is best granted to those 'who see and hear what goes on in the courtroom,'" i.e., the trial judge. (Citation omitted.) *State v. Mattox*, 11th Dist. Ashtabula No. 2005-A-0053, 2006-Ohio-2937, ¶ 54.

**{¶32}** When reviewing the entirety of the record, we cannot hold that the trial court abused its discretion in considering the evidence before it and finding that Peric failed to meet his burden to demonstrate a competency evaluation was warranted, especially given the lack of testimony to support the contention that his seizure condition impacted his competency. *See id.* at ¶ 26-54 (where the defendant had "angry and accusatory outbursts," repeatedly questioned the constitutionality of the charges, contended that evidence had been tampered with, and stated that the charges should be dismissed, this was insufficient to warrant an inquiry into his competence).

**{¶33}** The first assignment of error is without merit.

**{¶34}** In his second assignment of error, Peric argues that the trial court erred when it joined together his three charges into one trial since they were based on

separate acts.

{¶35} Crim.R. 8(A) provides that multiple offenses may be charged in the same indictment or complaint if they "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint * * *, or by such joinder for trial together of indictments, informations or complaints * * *, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14. Joinder of offenses is "favored in the law" as it conserves judicial resources, "lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980).

{¶36} Generally, the trial court's refusal to separate charges for trial is reviewed under an abuse of discretion standard. *State v. Martin*, 11th Dist. Lake Nos. 2017-L-005 and 2017-L-006, 2019-Ohio-22, ¶ 48, citing *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981). In the present matter, however, since Peric did not seek severance or otherwise object to the joinder of the offenses, the applicable standard of review is plain error. *State v. Gordon*, 152 Ohio St.3d 528, 2018-Ohio-259, 98 N.E.3d 251, ¶ 22. "To successfully assert that a trial court committed plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial." *Id.* at ¶ 23.

10

**{¶37}** "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶ 60, citing *State v. Schaim*, 65 Ohio St.3d 51, 59, 600 N.E.2d 661 (1992). In the present matter, the evidence would have been admissible as "other acts" evidence under Evid.R. 404(B) and was also simple and distinct. Thus, under either ground, no prejudice was demonstrated.

**{¶38}** Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶39}** Here, the other acts would have been admissible to show intent and absence of mistake. Peric presented testimony of the Clerk of Courts to show that he was mistaken about the time he was permitted to call to speak with his daughters, justifying the phone calls made on the evening of July 3, 2017. However, the FaceTime call made during the afternoon hours of August 9 would demonstrate that he called at times other than those permitted by the court, leading to questions about the genuineness of his mistake defense. Further, Peric's claim that he had no intent to contact Joy for anything other than discussing the children was rebutted by evidence in other cases, as some included statements threatening to sue Joy and using expletives to insult her. On these grounds, the evidence of other acts would be permissible under

11

Evid.R. 404(B).

{¶40} Moreover, even if the evidence had not been otherwise admissible, a finding that the evidence in the present matter was simple and distinct is proper under these circumstances. Each of the incidents was described by the date on which it occurred, with a separate officer discussing the events of each incident. Importantly, it is evident that the jury was able to separate the three incidents and factual scenarios giving rise to the individual crimes, as Peric was acquitted of one of the three charges. "[A] defendant does not establish prejudice resulting from the joinder of criminal charges where the evidence presented by the state is direct and uncomplicated and the jury demonstrates its ability to segregate the proof on each charge." *State v. Jackson*, 11th Dist. Lake No. 2017-L-140, 2018-Ohio-3241, ¶ 27, citing *State v. Smith*, 11th Dist. Trumbull No. 91-T-4610, 1993 WL 407301, *8 (Sept. 30, 1993) ("[t]he jury * * * demonstrated their ability to carefully sort out the evidence relating to these three separate robberies and determine the defendant's guilt or innocence as to each separately"); *State v. Brooks*, 44 Ohio St.3d 185, 195, 542 N.E.2d 636 (1989).

{¶41} The second assignment of error is without merit.

{¶42} In his third assignment of error, Peric argues that trial counsel was ineffective for failing to move to sever the charges for trial.

{¶43} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466

12

U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶44} We do not find that trial counsel was ineffective by failing to file a motion to sever the offenses. As explained in the preceding assignment of error, such a motion would have been unsuccessful on multiple grounds and the failure to sever the offenses caused no prejudice to Peric.

{¶45} The third assignment of error is without merit.

{¶46} We will consider Peric's fourth and fifth assignments of error, which relate to the weight and sufficiency of the evidence, jointly.

{¶47} Crim.R. 29(A) provides, in pertinent part: "[t]he court * * * shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶48} Whereas "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997). "[A] reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* An appellate court must consider all the evidence in the record, the reasonable inferences, the credibility of

13

the witnesses, and whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Citation omitted.) *Thompkins* at 387. "Since there must be sufficient evidence to take a case to the jury, it follows that 'a finding that a conviction is supported by the *weight* of the evidence necessarily must include a finding of sufficiency.'" (Citation omitted.) *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

{¶49} To convict Peric of Violating a Protection Order, the State had to prove, beyond a reasonable doubt, that he did "recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." R.C. 2919.27(A)(1). Based on a review of the entire record, we find that the convictions were supported by the weight of the evidence and, thus, there was also sufficient evidence to submit the charges to the jury.

{¶50} As to Case No. 17CRB02912, which relates to the offense committed from July 3, 2017 to August 6, 2017, the evidence presented showed that Peric called Joy in July and left at least 30 voicemail messages from a period of time ranging from sometime after 8:45 p.m. to at least 9:30 p.m. Pursuant to the terms of the protection order, Peric was not to initiate communication with Joy, with the exception of sending messages through the Our Family Wizard app. There is no question that the evidence demonstrates Peric called Joy's phone, as supported by her cell phone logs, testimony, and the voicemail messages.

{¶51} Peric contends that he was not reckless in making these phone calls because he believed he was calling during a period of time where such contact was

14

permissible. "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). While Peric was permitted to call Joy's phone from 8:30 to 9:00 p.m. to speak with the children pursuant to the court's phone visitation order, Peric's calls to Joy's phone took place for a period of time running until at least 9:30 p.m. Peric argued at trial that he believed the order was from 8:30 to 9:30 p.m. since the public docket mistakenly stated this, as was conceded by the Clerk of Courts.

{¶52} The weight of the evidence supported the jury's decision to reject this explanation and find Peric acted recklessly. The evidence and testimony demonstrated that a copy of the court order permitting contact from only 8:30 to 9:00 p.m. was sent to Peric and he had been present in court when the terms of this order were discussed, making it unlikely that he would have needed to reference the public docket to determine the time. Perhaps more significantly, in the voicemails presented at trial, Peric states that he is to get a "half hour" of parenting time. As the order does not mandate the length of the calls, this provides much weight to the inference that he was referencing the half hour period from 8:30 to 9:00 p.m. As such, the jury could find he was aware he could not call after that time. Further, although the call logs do not confirm it, Joy testified that Peric had called after 9:30 p.m., until 9:34 p.m. Although Peric raises issues with Joy's credibility throughout her testimony, the jury was entitled to determine whether this was credible. The issue of credibility of witnesses is for the trier of fact to determine and "an appellate court may not substitute its own judgment." *State v. Starkey*, 11th Dist. Ashtabula No. 2017-A-0022, 2017-Ohio-9327, ¶ 52,

15

citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). Further, her testimony was generally consistent with the evidence presented at trial.

**{¶53}** Although not discussed by the parties, we also note that leaving voicemails is specifically prohibited by the protection order. While Peric is permitted to call Joy's cell phone during the designated time period as is necessary to talk to his children (who do not have their own phones), this does not extend to leaving voicemail messages for Joy.

**{¶54}** We also note that an additional message, which references his parenting time with the children but also called Joy an "evil hateful bitch" was sent through Our Family Wizard on August 6, 2017, pursuant to the testimony and records presented at trial. Although Peric does not address this, it would also appear to be in violation of the protection order, which permitted communications only about the children and would not extend to personal attacks. Thus, there were multiple grounds to find a violation occurred for this offense.

**{¶55}** While Peric takes issue with the quality of the police officers' investigation, as this court has previously held, the police are not required to collect all possible evidence for a conviction to be supported by the evidence and "we will not speculate on what further police investigation may or may not have discovered" when there is sufficient, credible evidence. (Citation omitted.) *State v. Griggs*, 11th Dist. Lake No. 2014-L-127, 2015-Ohio-4635, ¶ 58.

**{¶56}** Regarding Case No. 17CRB04141, for the November 8, 2017 offense, Peric contends that the message sent in Our Family Wizard discusses Joy taking his children from him and, thus was permissible under the protection order since the parties

16

were permitted to communicate through that app "for all issues concerning minor children."

{¶57} The protection order prevents any contact between the parties. As amended, it orders that the parties "shall communicate exclusively through Our Family Wizard for all issues concerning minor children." While this allows for facilitation of communication to address the children's needs, it is evident that this statement's intent is not to allow Peric to send messages threatening lawsuits and prison time based on a perceived underlying conflict over the children. This is an unreasonable interpretation of the order. Under this interpretation, Peric would have license to say anything to Joy provided he mentioned the children in the message.

{¶58} To the extent that Peric argues it was not proven he was the one who sent the message, it is reasonable to infer that he sent the communication under the circumstances. As Joy explained, both she and Peric had their own accounts with specific login information and passwords, the message came from his account, and Peric had used the app to communicate with her in the past. The message also referred to specific issues dealing with their interactions and children, giving further support to a conclusion that he sent it. *State v. McCaleb*, 2d Dist. Greene No. 05CA155, 2006-Ohio-4652, ¶ 16-19 (the presumption that contact came from the owner of the cell phone when considered in light of additional facts demonstrating the sender of the text message supported the conviction for violating a protection order).

{¶59} As to both offenses, the foregoing evidence satisfies the elements of R.C. 2919.27(A)(1), constituting reckless violations of the protection order. Since all elements were proven beyond a reasonable doubt and the convictions are not against

17

the weight of the evidence, we find that they are also supported by sufficient evidence.

{¶60} The fourth and fifth assignments of error are without merit.

{¶61} For the foregoing reasons, the judgment denying the Motion for Competency Evaluation and Peric's convictions for Violating a Protection Order in the Willoughby Municipal Court are affirmed. Costs to be taxed against appellant.


TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.